## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF WEST VIRGINIA

DIANA MEY, individually and on behalf of a
class of all persons and entities similarly situated,

        Plaintiff

v.                                  Case No.  5:15-cv-101  (Bailey)

GOT WARRANTY, INC., N.C.W.C., INC.,      CLASS ACTION COMPLAINT
PALMER ADMINISTRATIVE SERVICES,
INC.,                                      Electronically filed:  August 6, 2015

        Defendants.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiff Diana Mey brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      In violation of the TCPA, Defendant Got Warranty, Inc. ("Got Warranty") placed computer-dialed telemarketing calls to Ms. Mey's cellular telephone, and placed telemarketing calls to a number Ms. Mey had registered on the National Do Not Call Registry.

3.      Got Warranty was retained by defendant N.C.W.C., Inc. to promote the services of Palmer Administrative Services, Inc. ("Palmer Administrative"), which are under common ownership.

4.      Ms. Mey never consented to receive these calls, and they were placed to her for no legitimate purpose, and were solely intended to solicit business for Palmer Administrative.

5.      Because the call was transmitted using technology capable of generating hundreds of thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Ms. Mey brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from Got Warranty, Inc. promoting the good and services of Palmer Administrative.

6.      A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

7.      Plaintiff Diana Mey is a resident of the State of West Virginia.

8.      Defendant Got Warranty, Inc. is a California Corporation with a principal place of business located at 6837 Hayvenhurst Ave. in Van Nuys, CA, but does business in this District.

9.      Defendant N.C.W.C., Inc. is a New Jersey Corporation with a principal place of business located at 3430 Sunset Ave., in Ocean, NJ 07712, but does business in this District.

2

10.     Defendant Palmer Administrative Services, Inc. is also a New Jersey corporation with a principal place of business located at 3430 Sunset Ave., in Ocean, NJ 07712, but does business in this District.

## Jurisdiction & Venue

11.     The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

12.     Venue is appropriate in this district pursuant to 18 U.S.C. 1391(b)(2), as the Plaintiff is a resident of this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## TCPA Background

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

15.     Under the TCPA, as interpreted by the Federal Communications Commission, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

16.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

17.     In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

18.     In May of 2013, the FCC reinforced this issue.  *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services.").

19.     The 2013 FCC Order further explained:

> To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive

that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

[ ] In sum, under our current rules and administrative precedent interpreting and implementing  sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call.

*Id.* at ¶¶ 46-47).

20.     Accordingly, an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call under a number of theories, including vicarious liability.  Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the call.

21.     N.C.W.C. and Palmer Administrative are legally responsible to ensure that calls made by Got Warranty complied with applicable telemarketing law, even if their employees did not physically dial the calls.

### The TCPA prohibits telemarketing calls to numbers listed
### on the Do Not Call Registry, unless the caller
### has the recipient's signed, written consent

22.     The national Do Not Call Registry allows consumers to register their

telephone numbers and thereby indicate their desire not to receive telephone solicitations at

those numbers.  *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored

indefinitely, or until the registration is cancelled by the consumer or the telephone number

is removed by the database administrator."  *Id.*

23.     The TCPA and implementing regulations prohibit the initiation of telephone

solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47

C.F.R. § 64.1200(c)(2).

24.     A person whose number is on the Registry, and who has received more than

one telephone call within any twelve-month period by or on behalf of the same entity in

violation of the TCPA, can sue the violator and seek statutory damages.  47 U.S.C. §

227(c)(5).

25.     The regulations exempt from liability a caller who has obtained the

subscriber's signed, written agreement to receive telephone solicitations from the caller.

47 C.F.R. § 64.1200(c)(2)(ii).  That agreement must also include the telephone number to

which the calls may be placed.  *Id.*

### The TCPA bans autodialed telemarketing calls to cell phones
### without express written consent

26.     The TCPA's most stringent restrictions pertain to computer-generated

telemarketing calls placed to cell phones.

27.     The TCPA categorically bans persons and entities from initiating

telemarketing calls using an automated telephone dialing system (or "autodialer") to any

telephone number assigned to a cellular telephone service, unless the caller has express written consent.  *See* 47 C.F.R. § 64.1200(a)(2).

### Factual Allegations

28.     Got Warranty uses telemarketing to obtain individuals to sign up for extended automobile warranties.

29.     N.C.W.C. retains third parties, such as Got Warranty, for the purpose of promoting the extended automobile warranties offered by their sister company, Palmer Administrative.

30.     Palmer Administrative offers extended automobile warranties, but has limited or no contact with the general public for direct sales. Instead, it relies on third parties contracted with its sister company, N.C.W.C.

31.     N.C.W.C. and Palmer Administrative are under common ownership, both owned by Michael Shaftel.

32.     Since 2003, the Plaintiff registered her cellular telephone number, 304-280-XXXX, on the National Do Not Call Registry and has not removed it at any time since that date.

33.     On July 6, 2015, the Plaintiff received a phone call from Caller ID Number labeled as (732) 719-3020.

34.     When the call connected, there was an audible click from the receiver. After a pause, the call disconnected.

35.     The facts in the preceding paragraph indicate the call was placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

36.     On July 14, 2015, the Plaintiff received a phone call from the same Caller ID Number, (732) 719-3020.

37.     When the call connected, there was an audible click from the receiver.

38.     The facts in the preceding paragraph indicate the call was placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

39.     When the call connected with a telemarketing representative the Plaintiff was offered a vehicle service contract, which she did not desire and had not asked for.

40.     The Plaintiff was given the website http://gotwarranty.com/ by the calling party, and informed that she was being called to be offered a vehicle service contact by Palmer Administration, which was "the administration arm of N.C.W.C., Inc.".

41.     The Plaintiff was also informed that Palmer Administrative would be underwriting the policy.

42.     When the Plaintiff inquired further about the calling party and the services being offered, she was given the address and Better Business Bureau website for N.C.W.C. if she needed to receive any more information.

43.     Plaintiff is not a customer of Defendants, has not provided Defendants with her information or cellular telephone number for the purposes of telemarketing, and has not given the Defendants express written consent to place telemarketing calls to her cellular telephone number.

44.     Unfortunately, the Plaintiff's experience with these entities is not unique, as others have complained of similar telemarketing practices from the same Caller ID Number:

It is a 3rd party automotive extended warranty business that refers to themselves as "Dealer Services"…They will not stop calling, even when you say no.

*Caller: Dealer Services*
*Call Type: Telemarketer*

The company is Dealer Services in New Jersey. They buy lists of car buyers and solicit extended warranties, rather aggressively. I know nothing about the quality of their products but I generally do not trust this kind of product. They called me once daily for a week and did not leave a message. I called them and requested I be removed from their database, was told it will take 24-48 hours, which is baloney since their software should remove numbers immediately.
*Caller: Dealer Services*
*Call Type: Telemarketer*

732-719-3020 calls and hangs up - when you call back, after several rings, someone answers, "Dealer Services, what is the year, make and model of your vehicle?"  When I said I did not own a vehicle, they hung up on me.
*Call Type: Telemarketer*

*See* http://800notes.com/Phone.aspx/1-732-719-3020/2 (Last Visited July 27, 2015).

### Class Action Allegations

45.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

46.     The class of persons Plaintiff proposes to represent with respect to Count one is tentatively defined, subject to discovery and investigation, as all persons within the United States who any third party retained by N.C.W.C. or Palmer Administrative called on a cellular telephone line by the use of an automatic telephone dialing system promoting

the goods or services of N.C.W.C. or Palmer Administrative, in the four years prior to the date of filing up through the date of certification.

47.     The class of persons Plaintiff proposes to represent with respect to Count two is tentatively defined, subject to discovery and investigation, as all persons within the United States whose phone numbers were registered on the Do Not Call Registry for at least 31 days, and who, within the four years before the filing of the initial Complaint through the date of certification, received more than one telemarketing call within any twelve-month period from any third party retained by N.C.W.C. or Palmer Administrative promoting the goods or services of N.C.W.C. or Palmer Administrative

48.     The classes as defined above are identifiable through phone records and phone number databases.

49.     The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

50.     Plaintiff is a member of the classes.

51.     There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

a.     Whether the Defendants violated the TCPA by engaging in advertising by unsolicited telemarketing calls;

b.     Whether the Defendants engaged in a pattern of using an automatic telephone dialing system to call telephone numbers assigned to cellular telephone service;

c.     Whether the Defendants placed calls to cellular telephone numbers using an automatic telephone dialing system without obtaining the recipients' express written consent for the call;

           d.      Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendants' actions.

52.     Plaintiff's claims are typical of the claims of class members.

53.     Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class, she will fairly and adequately protect the interests of the class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

54.     The actions of the Defendants are generally applicable to the class as a whole and to Plaintiff.

55.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

56.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

57.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's provisions prohibiting
### autodialer and prerecorded message calls to cell phones

58.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

59.     The Defendants violated the TCPA by (a) initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiff's telephone numbers assigned to a cellular telephone service, or (b) by the fact that others caused the initiation of those calls on its behalf.  *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

60.     The Defendants' violations were negligent and/or knowing.

### Count Two:
### Violation of the TCPA's Do Not Call Provision

61.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62.     The Defendants violated the TCPA by (a) initiating more than one telephone call to the Plaintiff in a twelve month period while her number was on the National Do Not Call Registry (b) by the fact that others caused the initiation of those calls on its behalf.  *See* 47 U.S.C. § 227(c).

63.     The Defendants violations were negligent and/or knowing.

### Count Three:
### Injunctive relief to bar future TCPA violations

64.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

65.     The TCPA authorizes injunctive relief to prevent further violations of the TCPA.

66.     The Plaintiff respectfully petitions this Court to order the Defendants, and their employees, agents and independent distributors, to immediately cease engaging in unsolicited telemarketing in violation of the TCPA.

## Relief Sought

For herself and all class members, Plaintiff requests the following relief:

1.     That Defendants be restrained from engaging in future telemarketing in violation of the TCPA.

2.     That Defendants, and its agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

3.     That the Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure.

4.     That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation.

5.     That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

_s/ Jonathan R. Marshall_
John W. Barrett (WVSB#7289)
Jonathan R. Marshall (WVSB#10580)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Edward A. Broderick
Anthony Paronich
BRODERICK LAW, P.C.
99 High St., Suite 304
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com
_Subject to Pro Hac Vice_

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA   01760
(508) 655-1415
(508) 319-3077 _facsimile_
mmccue@massattorneys.net
_Subject to Pro Hac Vice_