## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## WHEELING

**DIANA MEY,** individually and on
behalf of a class of persons and
entities similarly situated,

       Plaintiff,

**v.**

**GOT WARRANTY, INC., GANNA FREIBERG,
N.C.W.C., INC.,** and **PALMER
ADMINISTRATIVE SERVICES, INC.,**

       Defendants.

**CIVIL ACTION NO. 5:15-CV-101
(BAILEY)**

## <u>ORDER DENYING DEFENDANTS' MOTION TO DISMISS</u>

Pending before this Court is the Motion to Dismiss Pursuant to Rule 12(b)(1) or in

the Alternative, Motion to Stay Pending Supreme Court Review [Doc. 71], filed February

12, 2016, by defendants N.C.W.C., Inc. and Palmer Administrative Services, Inc.  In March

of 2016, the Motion had been fully briefed and was then ripe for adjudication.  By Order

entered March 22, 2016, this Court granted the aspect of the Motion seeking a stay of

proceedings pending the Supreme Court's decision in ***Spokeo, Inc. v. Robins***, 742 F.3d

409 (9th Cir. 2014), *cert. granted*, 135 S.Ct. 1892 (U.S. Apr. 27, 2015) (No. 13-1339).

On May 16, 2016, the United States Supreme Court issued its decision in the

***Spokeo*** case.  By Order entered May 19, 2016, this Court ordered the parties to file briefs

explaining how the Supreme Court's decision affects their respective positions and opining

as to how this Court should proceed in the matter.  The requested briefs having been

received, this Court is now prepared to rule on the aspect of the Motion seeking dismissal

of the case for lack of subject matter jurisdiction.

## I.     BACKGROUND

The plaintiff filed the instant action on August 6, 2015, "to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act."   [Doc. 1 at ¶ 1].   The Complaint alleges that defendant Got Warranty, Inc.[1] placed "computer-dialed telemarketing calls" to the plaintiff's cellular telephone and to a number the plaintiff "had registered on the National Do Not Call Registry" without the plaintiff's consent in order "to promote the services of Palmer Administrative Services, Inc." [*Id.* at ¶¶ 2-3].   The Complaint also alleges that the calls were "transmitted using technology capable of generating hundreds of thousands of telemarketing calls per day."   [*Id.* at ¶ 5].   Thus, the plaintiff asserts that she is bringing this action "on behalf of a proposed nationwide class of other persons" who received like telephone calls.   [*Id.*].

Based on the alleged calls, the plaintiff has brought one count for "[v]iolation of the TCPA's provisions prohibiting autodialer and prerecorded message calls to cell phones," a second count for "[v]iolation of the TCPA's Do Not Call Provision," and a third count for "[i]njunctive relief to bar future TCPA violations."   [*Id.* at p. 12].

## II.     APPLICABLE LAW

### Article III Standing & the TCPA

Under the Telephone Consumer Protection Act ("TCPA"), a party is prohibited from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an

---

[1]  On March 15, 2016, plaintiff amended her Complaint to join Ganna Freiberg as a defendant in place of Got Warranty, Inc., which is believed to be defunct.

artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA creates a private right of action in which a person may bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B).

Article III, section 2 of the United States Constitution limits the judicial power of federal courts to cases and controversies.  To qualify as a case or controversy, a plaintiff in federal court must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).  To establish an injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id*. at 1548.

III.   **ANALYSIS**

In *Spokeo,* the Supreme Court addressed the injury-in-fact requirement for Article III standing.  *Spokeo* appears to have broken no new ground. Rather, the Supreme Court confirmed the long-established principle that injury-in-fact is one of three elements required for standing.  *Id*. at 1547.  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548.  The Supreme Court held that the Ninth Circuit Court of Appeals had addressed the particularity requirement of injury in fact — the requirement that the injury "must affect the plaintiff in a personal and

3

individual way" — but had overlooked the concreteness requirement, and had therefore failed to determine whether a consumer reporting agency's alleged violations of the Fair Credit Reporting Act's procedural requirements caused concrete injury. *Id*.

*Spokeo* confirms that either tangible or intangible injuries can satisfy the requirement of concreteness. *Id*. at 1549. Where the injury is intangible, *Spokeo* summarizes two approaches to meet this requirement. First, courts should consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. *Id*. As the Court noted, "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure. *See*, e.g., Restatement (First) of Torts §§ 569 (libel), 570 (slander per se) (1938)." *Id*. at 1549.

Second, Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law ... ." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992)). It "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id*.

The Court also noted that merely asserting a "bare procedural violation, divorced from any concrete harm," will not satisfy the concreteness requirement. *Id*. This observation has little application to claims under the TCPA, since those claims are not based on "bare procedural" rights, but rather on substantive prohibitions of actions directed toward specific consumers. Even for procedural rights, however, a "risk of real harm" can satisfy Article III. *Id*. The Court stated: "[T]he violation of a procedural right granted by

statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."  *Id*.  The Court offered two examples:

- "'[I]nability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III ... ."

- "[F]ailure to obtain information subject to disclosure under the Federal Advisory Committee Act 'constitutes a sufficiently distinct injury to provide standing to sue' … ."

*Id*. at 1549-50.

In *Spokeo*, the defendant sought a ruling that would have eviscerated causes of action seeking statutory damages.  But the Supreme Court did no such thing.  Instead, it issued a narrow ruling remanding the case to the Ninth Circuit solely on the basis that it failed to address the extent to which Robins' injuries were "concrete" as opposed to merely particularized, notwithstanding prior Supreme Court precedent requiring a finding of both. *Id*. at 1545.  The Supreme Court explicitly took no position on whether Robins' injuries were in fact concrete for standing purposes.  *Id*. at 1550.

*Spokeo* thus created no new law; it merely remanded the case to allow the Ninth Circuit to conduct the proper analysis.  As Justice Alito noted, "[w]e have made it clear time and time again that an injury in fact must be both concrete *and* particularized."  *Id*. at 1549 (emphasis in original).

This Court finds that unwanted phone calls cause concrete harm.  For consumers with prepaid cell phones or limited-minute plans, unwanted calls cause direct, concrete, monetary injury by depleting limited minutes that the consumer has paid for or by causing the consumer to incur charges for calls.  In addition, all ATDS calls deplete a cell phone's

5

battery, and the cost of electricity to recharge the phone is also a tangible harm.  While certainly small, the cost is real, and the cumulative effect could be consequential.

Of more import, such calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes.  The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.

One of the ways that *Spokeo* identifies to establish that an intangible injury is concrete is to show that it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Spokeo* at 1549.  Invasion of privacy is just such an intangible harm recognized by the common law.  Almost all states recognize invasion of privacy as a common law tort.  *See* Eli A. Meltz, No Harm, No Foul? Attempted Invasion of Privacy and the Tort of Intrusion Upon Seclusion, 83 Fordham L. Rev. 3431, 3440 (May,  2015) (state-by-state survey; "Currently, the vast majority of states recognize the intrusion strand of invasion of privacy either under common law or by statute").

The invasion of privacy claim that is most analogous here is intrusion upon seclusion.  *See Restatement (Second) of Torts* § 652B (1977).  The Fourth Circuit has recognized that the TCPA's prohibitions against robo-calls implicate privacy interests in seclusion.  *Maryland v. Universal Elections, Inc.,* 729 F.3d 370, 377 (4th Cir. 2013).  This tort claim has also often been applied to unwanted telephone calls. *See, e.g.*, *Charvat v. NMP, L.L.C.*, 656 F.3d 440, 452–453 (6th Cir. 2011) (Ohio law) (repeated telemarketing

calls, especially after do-not-call request, may be invasion of privacy);  ***St. Paul Fire &***

***Marine Ins. Co. v. Green Tree Financial Corp.***, 249 F.3d 389 (5th Cir. 2001) (Tex. law).

In essence, the TCPA can be seen as merely liberalizing and codifying the application of

this common law tort to a particularly intrusive type of unwanted telephone call.  While the

common law tort may require different elements than the TCPA, the Supreme Court's focus

in ***Spokeo*** was not on the elements of the cause of action but rather on whether the harm

was of a type that traditionally provides a basis for a common law claim.

        It is not only the common law that recognizes as actionable the harm caused by

invasion of privacy.  The right to privacy is protected under the Constitution.  *See, e.g.*,

***Lawrence v. Texas***, 539 U.S. 558 (2003); ***Eisenstadt v. Baird***, 405 U.S. 438 (1972).  *See*

*also* ***Winston v. Lee***, 470 U.S. 753, 758 (1985) (characterizing the Fourth Amendment as

protecting expectations of privacy, "the most comprehensive of rights and the right most

valued by civilized men").

        Even if invasion of privacy were not a harm recognized as redressable through a

common law tort claim, it would meet the requirement of concreteness as interpreted by

***Spokeo*** because  Congress so clearly identified it as a legally cognizable harm. According

to the ***Spokeo*** majority,"because Congress is well positioned to identify intangible harms

that meet minimum Article III requirements, its judgment is also instructive and important.

Thus, we said in ***Lujan*** that Congress may 'elevat[e] to the status of legally cognizable

injuries concrete, *de facto* injuries that were previously inadequate in law.'" ***Spokeo*** at

1549.

        Protection of consumers' privacy rights was clearly foremost in Congress's mind

when it enacted the telephone call restrictions of the TCPA.  The Congressional findings accompanying the TCPA repeatedly stress the purpose of protecting consumers' privacy. For example:

(5)     Unrestricted telemarketing, however, can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety.

(6)     Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.

* * * *

(9)     Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices.

(10)    Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

* * * *

(12)    Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy

8

invasion.

(13)   While the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call, the Federal Communications Commission should have the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy, or for noncommercial calls, consistent with the free speech protections embodied in the First Amendment of the Constitution.

(14)   Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce.

Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) (found as a note to 47 U.S.C. § 227).

As the Act's sponsor, Senator Hollings, emphasized: "Computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."  137 Cong. Rec. 30,821–30,822 (1991).

Thus, Congress repeatedly identified the intangible harm of invasion of privacy as one of its primary concerns when it enacted the TCPA.  As the Court noted in ***Spokeo***, its judgment that this harm is legally cognizable should be given great weight.

A second type of intangible harm suffered by plaintiff by the unwanted calls is intrusion upon and occupation of the capacity of the plaintiff's cell phone.  The harm

9

recognized by the ancient common law claim of trespass to chattels — the intentional dispossession of chattel, or the use of or interference with a chattel that is in the possession of another, is a close analog for a TCPA violation.  *See* Restatement (Second) of Torts § 217 (1965).  As noted in ***Spokeo***, the harm can be actionable even if it is "difficult to prove or measure." ***Spokeo*** at 1549.

A number of courts have held that temporary electronic intrusion upon another person's computerized electronic equipment constitutes trespass to chattels.  *See, e.g.*, ***Register.com, Inc. v. Verio, Inc.***, 126 F.Supp.2d 238, 249 (S.D. N.Y. 2000) (intruding electronically into business' database to harvest e-mail addresses, without authorization, causes harm by reducing the system's capacity;  "Although Register.com's evidence of any burden or harm to its computer system caused by the successive queries performed by search robots is imprecise, evidence of mere possessory interference is sufficient to demonstrate the quantum of harm necessary to establish a claim for trespass to chattels"), *aff'd,* 356 F.3d 393 (2d Cir. 2004);  ***America Online, Inc. v. Nat'l Health Care Discount, Inc.***, 121 F.Supp.2d 1255 (N.D. Iowa 2000);  ***America Online, Inc. v. LCGM, Inc.***, 46 F.Supp.2d 444 (E.D. Va. 1998);  ***Hotmail Corp. v. Van$ Money Pie, Inc.***, 1998 WL 388389 (N.D. Cal. Apr. 16, 1998); ***America Online, Inc. v. IMS***, 24 F.Supp.2d 548 (E.D. Va. 1998) (granting summary judgment against spammer on trespass to chattels and other claims); ***CompuServe, Inc. v. CyberPromotions, Inc.***, 962 F.Supp. 1015, 1022 (S.D. Ohio 1997) (issuing preliminary injunction against spammer on theory of trespass to chattels; "A plaintiff can sustain an action for trespass to chattels, as opposed to an action for conversion, without showing a substantial interference with its right to possession of that

chattel."); *School of Visual Arts v. Kuprewicz*, 771 N.Y.S.2d 804 (N.Y. Sup. Ct. 2003) (facts alleged constituting elements of trespass to chattels claim). *See also Microsoft Corp. v. Does 1–18*, 2014 WL 1338677, at *9–10 (E.D. Va. Apr. 2, 2014) ("The unauthorized intrusion into an individual's computer system through hacking, malware, or even unwanted communications supports actions under these claims"; use of "botnet" to access computers and servers without authorization states claim for trespass to chattels).

Courts have applied this tort theory to the very actions alleged here — unwanted telephone calls. *Czech v. Wall St. on Demand*, 674 F.Supp.2d 1102, 1122 (D. Minn. 2009) (declining to dismiss cell phone owner's trespass to chattels claim against sender of unwanted text messages); *Amos Financial, L.L.C. v. H&B&T Corp.*, 2015 WL 3953325, at *8 (N.Y. Sup. Ct. June 29, 2015) (occupying memory of answering machine and interfering with unencumbered access to phone would have been trespass to chattels if proven). Even if the consumer does not answer the call or hear the ring tone, the mere invasion of the consumer's electronic device can be considered a trespass to chattels, just as "plac[ing a] foot on another's property" is trespass. *Spokeo*, at 1551 (Thomas, J., concurring).

Thus, the harm caused by unwanted robocalls to cell phones has a close relationship to the harm recognized by this ancient common law tort — a tort that protects fundamental property rights. Indeed, the TCPA can be viewed as merely applying this common law tort to a 21st-century form of personal property and a 21st-century method of intrusion. Applying this ancient tort to these calls and making redress more readily available is particularly appropriate since electronic intrusion is so much easier, and so

much more readily repeated, than physical misuse of a chattel.

The Eleventh Circuit has recognized that "the occupation of the recipient's telephone line and fax machine" is a sufficient injury-in-fact for a TCPA claim asserting violations of the statute's junk fax provisions.  ***Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.***, 781 F.3d 1245, 1250–1251 (11th Cir. 2015) (occupation of fax machine for one minute is sufficient, even though there was no evidence that anyone ever printed or saw the faxes).  Several district courts have applied this same reasoning to the occupation of telephone lines and telephones caused by ATDS calls.  This pre-***Spokeo*** decision is consistent with ***Spokeo*** and supports the finding that this harm is concrete.

A final intangible harm that the illegal calls caused here is that they required the plaintiff to tend to them and wasted the plaintiff's time.  The first post-***Spokeo*** decision to address the TCPA squarely holds that wasting the recipient's time is a concrete injury that satisfies Article III:

> Here, the court is satisfied that plaintiffs' allegations demonstrate "concrete injury" as defined in ***Spokeo***.  In ***Spokeo***, the "injury" plaintiffs incurred was arguably merely procedural and thus non-concrete.  In contrast, the TCPA and [state law] violations alleged here, if proven, required plaintiffs to waste time answering or otherwise addressing widespread robocalls.  The use of the autodialer, which allegedly enabled defendants to make massive amounts of calls at low cost and in a short period of time, amplifies the severity of this injury.  As Congress and Washington State's legislature agreed, such an injury is sufficiently concrete to confer standing.

***Booth v. Appstack, Inc.***, 2016 WL 3030256, *5 (W.D. Wash. May 25, 2016).

A number of pre-***Spokeo*** decisions have also recognized that lost time is an adequate injury-in-fact in TCPA and other cases.  TCPA cases include ***Leung v. XPO Logistics, Inc.***, 2015 WL 10433667, at *4 (N.D. Ill. Dec. 9, 2015) ("Leung alleges that he lost time in responding to XPO's call. … That is enough, so XPO's motion must be denied.");  ***Martin v. Leading Edge Recovery Solutions., L.L.C.***, 2012 WL 3292838, at *3-4 (N.D. Ill. Aug. 10, 2012) ("[plaintiffs suffered an injury in fact] because they had to spend time tending to unwanted calls").  Courts reach the same conclusion outside the context of the TCPA.  *See, e.g.*, ***Freedom From Religion Foundation, Inc. v. Obama***, 641 F.3d 803, 807 (7th Cir. 2011) ("What did provide standing, we held, is that the plaintiffs had altered their daily commute, thus incurring costs in both time and money, to avoid the unwelcome religious display.");  ***Rex v. Chase Home Finance, L.L.C.***, 905 F.Supp.2d 1111 (C.D. Cal. 2012) ("a plaintiff suffers an injury sufficient to establish Article III standing where she alleges that she lost time spent responding to the defendant's wrongful conduct and the lost time is at least indirectly attributable to the defendant's actions.").

When it enacted the TCPA, Congress repeatedly emphasized the nuisance aspect of robocalls, showing that it considered the interruptions that they cause and the time they cause consumers to waste to be one of the harms it sought to remedy.  As noted above, Senator Hollings made this clear: "They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed." 137 Cong. Rec. 30,821–30,822 (1991).  Congress was also mindful of protecting consumers from the burdens they face when dealing with unwanted calls.  One of its findings was that "[t]echnologies that might

13

allow consumers to avoid receiving such calls ... place an inordinate burden on the consumer." Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) (found as a note to 47 U.S.C. § 227).  Courts should give weight to Congress's identification of these harms and should determine that they meet the requirement of concreteness.

       *Spokeo* also holds that a risk of harm can also be concrete enough to satisfy Article III.  *Spokeo* at 1549.  Unwanted calls meet this standard too, as they cause a risk of injury due to interruption and distraction.  "Driving while distracted" due to a cell phone call is a common cause of automobile accidents: the National Highway Traffic Safety Administration found that cell phone use contributed to 995 fatalities, or 18% of all fatalities, in distraction-related crashes in 2009.   NHTSA, *Distracted Driving 2009*, http://www-nrd.nhtsa.dot.gov/Pubs/811379.pdf.

       A large number of *pre-Spokeo* cases, applying the principles outlined above, have held that unwanted robocalls cause particularized and concrete harm, so that a plaintiff asserting a TCPA claim has Article III standing.  *See, e.g. Weisberg v. Kensington Professional and Associates L.L.C.*, 2016 WL 1948785, at *2–3 (C.D. Cal. May 3, 2016) ("Plaintiff here does not allege statutory standing, or standing based on the mere alleged violation of a federal statute.   Instead, Plaintiff states his theory of actual, individual, concrete injury in the FAC: Defendant illegally contacted Plaintiff and Class members via their cellular telephones thereby causing Plaintiff and Class members to incur certain charges or reduced telephone time for which Plaintiff and Class members had previously paid by having to retrieve or administer messages left by Defendant during those illegal calls, and invading the privacy of said Plaintiff and Class members. (FAC ¶ 28.) The

invasion of privacy and the allegation that the illegal calls cost Plaintiff and the class money-financial harm-are not speculative future injuries or injuries based on the violation of rights provided in a statute. ... [I]n this case, Plaintiff has alleged an invasion of his privacy and monetary damages.   These allegations are much more concrete and particularized than those alleged in *Spokeo* and have been accepted as actual injuries in other cases"); *Haysbert v. Navient Solutions, Inc.*, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016) (allegations that calls caused stress and embarrassment and interrupted business and personal interactions are sufficient for Art. III standing);   *Abante Rooter and Plumbing, Inc. v. Birch Communications, Inc.*, 2016 WL 269315, at *3 (N.D. Ga. Jan. 7, 2016) (noting Congress's concern that autodialers tie up recipients' telephone lines; "To establish standing, Plaintiff need only allege that its cellular telephone line was occupied by an unsolicited call in violation of the TCPA. ... The invasion of this statutory right established by the TCPA is itself a concrete harm); *Jamison v. Esurance Insurance Services, Inc.,* 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016) ("Here, Jamison alleged that when Esurance violated the TCPA, it caused her to incur cellular telephone charges or to reduce her previously paid-for cellular telephone time, and that it invaded her privacy. Doc. 7, Pl.'s First Am. Compl. ¶ 49.  At this stage, this pleading is sufficient to establish an injury in fact."); *King v. Time Warner Cable,* 113 F.Supp.3d 718 (S.D. N.Y. 2015) ("The legislative history of the TCPA makes clear that the provision against autodialing was drafted to protect 'consumers who pay additional fees for cellular phones, pagers, or unlisted numbers [and] are inconvenienced and even charged for receiving unsolicited calls from automatic dialer systems.' ... In receiving 163 unsolicited calls, Plaintiff clearly

experienced the very sort of inconvenience against which Congress sought to protect her. She is entitled to seek compensation for violations of this right, regardless of whether she suffered monetary damages."); *Leung v. XPO Logistics, Inc.*, 2015 WL 10433667, at *4 (N.D. Ill. Dec. 9, 2015); *Schumacher v. Credit Protection Ass'n*, 2015 WL 5786139, at *5 (S.D. Ind. Sept. 30, 2015) ("We agree with CPA that 'Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing,' and that an interest in statutory damages cannot be the sole injury to satisfy Article III requirements, but that is not what has happened here. … Here, Mr. Schumacher's TCPA-created right to privacy was invaded by repeated automated calls from CPA.  'Congress referred to the interest protected by the TCPA as a "privacy" interest, noting that "[e]vidence ... indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy."'"); *Wallace v. Enhanced Recovery Co., L.L.C.*, 2015 WL 5455937, at *5 (E.D. N.C. Sept. 16, 2015) (use of plaintiff's phone for a period of time is sufficient; "Under the TCPA, and as relevant to this case, an injury-in-fact may be established where owner of the telephone number, suing as plaintiff, demonstrates that he or she lost the use of his or her cellular telephone."); *Ikuseghan v. MultiCare Health System*, 2015 WL 4600818 (W.D. Wash. July 29, 2015) (using up cell phone minutes and invading privacy create Art. III standing); *Boise v. ACE USA, Inc.*, 2015 WL 4077433, at *3 (S.D. Fla. July 6, 2015) ("Thus, Mr. Boise does not need to 'allege that he wanted to use his phone for another purpose but could not do so.' ... To establish standing, Mr. Boise needs to allege only that his line was occupied by an

16

unsolicited call in violation of the TCPA.  The statute presumes that the violation was 'intrusive' and 'potentially dangerous,' and accordingly includes a private right of action to rectify the harm."); *Meyer v. Bebe Stores, Inc.*, 2015 WL 431148, (N.D. Cal. Feb. 2, 2015) (invasion of privacy sufficient to confer standing even though plaintiff does not allege she incurred any carrier charges for the specific text message at issue);  *Martin v. Leading Edge Recovery Solutions, L.L.C.*, 2012 WL 3292838, at *3 (N.D. Ill. Aug. 10, 2012).

This Court has located one additional post-*Spokeo* decision.  In *Rogers v. Capital One Bank (USA), N.A.*, 2016 WL 3162592 (N.D. Ga. June 7, 2016), the Court found that a violation of the TCPA was a concrete injury, stating:

> Here, the Plaintiffs alleges that the Defendant made unwanted phone calls
> to their cell phone numbers, in violation of the TCPA.  As the Eleventh Circuit
> has held, a violation of the TCPA is a concrete injury.  Because the Plaintiffs
> allege that the calls were made to their personal cell phone numbers, they
> have suffered particularized injuries because their cell phone lines were
> unavailable for legitimate use during the unwanted calls.  The Plaintiffs have
> alleged sufficient facts to support standing.

Rogers *2, citing *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015).

For the reasons stated above, the Motion to Dismiss Pursuant to Rule 12(b)(1) or in the Alternative, Motion to Stay Pending Supreme Court Review [**Doc. 71**] is **DENIED**. As a final matter, this Court notes that this matter was stayed pending resolution of *Spokeo*.  As the parties are keenly aware, the Supreme Court handed down its ruling on

that matter on May 16, 2016.  Although some would argue the matter was not technically resolved as it was remanded based on the Ninth Circuit's incomplete standing analysis, this Court has expressed its position herein that this matter has effectively been resolved. Accordingly, to avoid any confusion, this Court hereby **LIFTS** the stay.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: June 30, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE